IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KASHWERE, LLC, et al.          )
                               )
         Plaintiffs,           )
                               )
    v.                         )     No. 12 C 5018
                               )
KASHWERE USAJPN, et al.        )
                               )
         Defendants.           )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on the parties' dispositive motions.  For the

reasons stated below, the dispositive motions are granted.

## BACKGROUND

In 1999, Defendant Peter Seltzer (Seltzer) formed Plaintiff Kashwere LLC

(Kashwere), which has an ownership in certain trademarks (Marks).  In 2006,

Kashwere Comforts, LLC (Comforts), an entity owned by Seltzer, entered into a

contract with Flat Be Co. Ltd. (FBC) under which FBC was to be the exclusive

distributor of Kashwere goods in Japan (FBC Agreement).  In January 2010, Seltzer

sold Kashwere to Plaintiff TMG Kreations, LLC (TMG), entering into an Asset

Purchase Agreement.  Also, in January 2010, Kashwere under the ownership of

TMG entered into a licensing agreement (Licensing Agreement) with Comforts,

1

which was another entity owned by Seltzer. Under the terms of the Licensing Agreement, Kashwere licensed to Comforts the right to distribute Kashwere products in Japan through FBC. In January 2011, Seltzer created Defendant Kashwere USAJPN, LLC (USAJPN), a holding company, and transferred Comforts' rights under the Licensing Agreement to USAJPN. Seltzer also transferred 10% of USAJPN to Hiroshi Miyakawa, the owner of FBC.

In June 2012, USAJPN filed a lawsuit in federal court in California (California Action). In the California Action, USAJPN alleged that it had the exclusive right to sell Kashwere goods in Japan and that several of Plaintiffs' wholesaler customers were attempting to sell Kashwere goods in Japan. The California Action was ultimately resolved between the parties with all Defendants either agreeing not to sell Kashwere products in Japan or to stop selling Kashwere goods.

Shortly after the conclusion of the California Action, Plaintiffs brought the instant action against USAJPN and Seltzer. On July 2, 2012, Plaintiffs filed an amended complaint that includes a claim seeking a declaration that the Licensing Agreement was terminated as a result of material breaches by USAJPN (Count I), a claim seeking a declaration that the Licensing Agreement is terminable at will and has been effectively terminated by Kashwere (Count II), a rescission and restitution claim (Count III), a claim seeking injunctive relief relating to the Licensing Agreement (Count IV), breach of contract claims (Count V), and a claim seeking injunctive relief relating to a non-compete agreement (Count VI). On July 12, 2012, Defendants filed an answer to the amended complaint and a counterclaim was filed

2

by USAJPN, FBC, Sirius Corporation (Sirius), and Seltzer (collectively referred to as "Defendant Parties") against TMG, Kashwere, Cedric Reingold (Reingold), and Merri Gleckler (Gleckler) (collectively referred to as "Plaintiff Parties"). The counterclaim includes breach of contract claims (Count I), additional breach of contract claims (Count II), fraud claims (Count III), intentional interference with contract and economic relations (IICER) claims (Count IV), and additional breach of contract and accounting claims (Count V).

On September 11, 2012, Plaintiffs responded with a counterclaim against FBC and Sirius (collectively referred to as "FBC Parties"), which includes a claim seeking injunctive relief (Count I), a claim seeking declaratory relief based on alleged breaches of the Licensing Agreement (Count II), a declaratory relief claim seeking a declaration that the Licensing Agreement was terminable at will (Count III), rescission and restitution claims (Count IV), additional breach of contract claims (Count V), unjust enrichment claims (Count VI), and tortious interference with prospective economic advantage (TIPEA) claims (Count VII). FBC Parties moved to dismiss the TIPEA claim in Count VII and moved in the alternative for judgment on the pleadings on Count VII. On September 26, 2013, the court denied those motions.

Defendants now move for summary judgment on the claims brought by Plaintiffs against them. In addition, Plaintiff Parties move for summary judgment on the counterclaim brought against them by Defendant Parties, and FBC Parties move for summary judgment on the counterclaim brought against them by Plaintiffs.

3

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009).  A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).  In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I.  Defendants' Motion for Summary Judgment

Defendants move for summary judgment on the claims included in the amended complaint.

4

A.  Declaratory Relief and Breach of Contract Claims (Counts I and V)

Defendants move for summary judgment on the claim for declaratory relief

and on the breach of contract claim in Counts I and V.  Under Illinois law for a

breach of contract claim, a plaintiff must establish: "(1) offer and acceptance, (2)

consideration, (3) definite and certain terms, (4) performance by the plaintiff of all

required conditions, (5) breach, and (6) damages." *Wigod v. Wells Fargo Bank, N.A.*,

673 F.3d 547, 560 (7th Cir. 2012)(internal quotations omitted)(quoting *Association*

*Benefit Services, Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007)).

Plaintiffs' claims in Counts I and V of the amended complaint are premised on

Plaintiffs' contention that the Licensing Agreement was terminated as a result of

material breaches.  Defendants contend that the undisputed facts show that there was

no breach of the terms of the Licensing Agreement.  Plaintiffs argue that the court

should deny Defendants' motion for summary judgment, contending that Defendants

breached the Licensing Agreement specifically in eight different ways.  Even though

Plaintiffs have misnumbered their listing of the breaches on pages 15 and 16 by

numbering breach number eight as "Breach #9," the court will address Plaintiffs'

claims relating to the eight alleged breaches below.


1.  Sublicense

Plaintiffs contend that Defendants breached the term in the Licensing

Agreement prohibiting the sublicensing of the Marks.  It is undisputed that the

Licensing Agreement provided that Kashwere had the authority to apply to register

the Marks. (DE 139: TMG SF Par. 45). Defendants acknowledge that FBC was

given the right by Comforts to sell Kashwere goods in Japan. Defendants correctly

point out that Plaintiffs' objection at this juncture to FBC acting as a sublicensee, is

untimely and not in keeping with Plaintiffs' prior conduct. It is undisputed that in

the Licensing Agreement signed in 2010, the parties recognized a prior "exclusive

distribution agreement between [FBC] and [Comforts]" in 2006, and that FBC was to

continue to be the exclusive distributor in Japan. (D Ex. 13). Thus, it is undisputed

that at the latest since 2010, Plaintiffs understood that FBC was to be the exclusive

distributor acting on behalf of Comforts and had been since 2006. Plaintiffs'

complaint at this juncture, contending that FBC was an improper sublicensee under

the terms of the Licensing Agreement, is not consistent with Plaintiffs' prior

knowledge and acquiescence relating to FBC's actions. Plaintiffs also contend that

Seltzer secretly expanded FBC's rights in an agreement with FBC in 2009 (2009

FBC Agreement). However, Plaintiffs have not pointed to evidence to show that the

2009 FBC Agreement did anything more than clarify FBC's rights and that its

purpose was merely to insulate Selzer from liability. (DE 139-12). Plaintiffs have

not pointed to sufficient evidence to show that FBC exceeded the scope of its license.

Also, as will be explained below in regard to the Kashwere RE line, Plaintiffs sought

to include FBC in new designs after TMG's purchase of Kashwere. Thus, the

undisputed facts show that there was no breach of the sublicense prohibition.


2.  Registration of Marks (Alleged Breaches #1-2)

6

Plaintiffs contend that Defendants breached the term in the Licensing Agreement prohibiting the registration of the Marks. It is undisputed that the Licensing Agreement provided that the "Licensee shall not apply to register as a trademark the Licensed Marks or any trademarks owned by Licensor," and that the Licensor only was authorized to register the Marks. (DE 139: TMG SF Par. 44-45). Defendants contend that it is undisputed that it was only FBC and not Seltzer, Comforts, or USAJPN that attempted to register the Marks in Japan. (DE 131-1: D SF Par. 53-54, 57). Plaintiffs "deny" such facts, (DE 171: RD SF Par. 53, 57), but Plaintiffs fail to cite to evidence in their response and thus such facts are deemed undisputed pursuant to Local Rule 56.1. *See Donald v. Portillo's Hot Dogs, Inc.*, 2013 WL 3834402, at *3 (N.D. Ill. 2013)(explaining that "[i]f the opposing party denies a fact as true, [Local Rule 56.1] requires the opposing party to provide 'specific reference to affidavits, parts of the record, and other supporting materials' that support the denial")(quoting LR 56.1(b)); *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008)(stating that "a district court has broad discretion to require strict compliance with Local Rule 56.1"). Defendants also contend that there is not sufficient evidence that Sirius registered the Marks. Plaintiffs concede that although they believe that Sirius took part in the registration, Sirius was merely acting as the agent to FBC. (Ans. DSJ 13-14).

Although it is undisputed that FBC registered the Marks in Japan, it is also undisputed that FBC was not a party to the Licensing Agreement and thus was not in

7

privity with Plaintiffs in regard to the Licensing Agreement. (DE 171: R DSF Par. 57). Thus, Plaintiffs may not pursue a breach of contract claim against FBC in regard to the registration. In addition, it is also clear that FBC was acting to perform its role as envisioned in the Licensing Agreement, which was signed by Plaintiffs. FBC was merely acting in accordance with the parties' understanding of the terms of the Licensing Agreement. It is undisputed that FBC was to be the exclusive distributor of Kashwere products in Japan, and that FBC's counsel advised FBC that it needed to register the Marks in Japan in order to do so. It is also clear that in seeking to register the Marks, FBC was not attempting to deprive Plaintiffs of any interest in the Marks. In response to Defendants' motion for summary judgment, Plaintiffs fail to point to evidence that would show that FBC, in registering the Marks, insinuated that it owned the Marks or indicated anything other than that Plaintiffs were the ultimate owners of the rights in the Marks. (DE 171: R DSF Par. 57). Thus, the undisputed facts show that there was no breach of the Licensing Agreement with regard to the registration of the Marks in Japan.

### 3. Filing of Lawsuit (Alleged Breaches #3-5)

Plaintiffs contend that Defendants breached the terms of the Licensing Agreement by filing a lawsuit. Plaintiffs contend that the Licensing Agreement provides that ownership in the Marks and the right to use the Marks remains entirely vested with Plaintiffs. Plaintiffs also contend that the Licensing Agreement provides that the goods sold by the Licensee will conform to the quality standards under the

control of the Licensor.  (Ans. D SJ 14-15).  Plaintiffs contend that their rights were

violated because Defendants filed a lawsuit against Plaintiffs.  While Plaintiffs

correctly quote the Licensing Agreement with respect to the interests that remain

vested with Plaintiffs, nothing in the Licensing Agreement prohibited Defendants

from bringing litigation to protect their interests accorded to them in the Licensing

Agreement in the exclusive distribution of Kashwere products in Japan.  Plaintiffs

point to no section of the Licensing Agreement that barred Defendants from pursuing

litigation to protect their interests under the Licensing Agreement or from naming

Plaintiffs as a defendant in such litigation.  Thus, the undisputed facts show that there

was no breach of the Licensing Agreement with regard to the filing of lawsuits by

Defendants.

### 4.  Creation of LLC and RE Line (Alleged Breaches #6-7)

Plaintiffs contend that Defendants breached the terms in the Licensing

Agreement by creating a new LLC and line of products.  It is undisputed that the

Licensing Agreement provided that the Licensee shall identify itself as the exclusive

Licensee and "shall not hold itself out as the Licensor."  (DE 139: R TMG SF Par.

43).  Plaintiffs contend that FBC Parties created, manufactured, and sold a new line

called "Kashwere RE" (RE Line) and do not specifically identify themselves as

exclusive licensees.  Reingold denies any awareness of the RE Line and denies in his

declaration in a conclusory fashion that he authorized the RE Line or any other new

clothing line.  However, Defendants have produced evidence showing that Reingold

was aware of the RE Line.  Plaintiffs have failed to offer evidence that would explain why Defendants sent Reingold an email outlining the new RE Line and Reingold's responding email discussing the selling of the new line asking Defendant to "put together a list of items sold in Japan that we do not sell. . . ." (D Ex. 11).  Reingold's conclusory denial is not sufficient for a reasonable trier of fact to find in Plaintiffs' favor.  In regard to the creation of USAJPN, and the use of "USA" in its name, although the company does not list itself as an exclusive licensee, it is undisputed that the company does not engage in commercial activity and that it is merely a holding company and there is no indication that the "USA" designation creates a false designation of origin.  Thus, there is no justification to warrant clarifying that it is acting merely as an exclusive licensee.  Therefore, the undisputed facts show that there was no breach of the Licensing Agreement with regard to failure to expressly identify actors as the exclusive licensee under the Licensing Agreement.

### 5.  Right of First Refusal (Breach #9, as Alleged by Plaintiffs)

Plaintiffs contend that Defendants breached the term in the Licensing Agreement providing Plaintiffs with a right of first refusal.  It is undisputed that the Licensing Agreement provided that: "in the event [Comforts] receives from a third party a written offer acceptable to [Comforts] to acquire [Comforts'] rights under this Agreement, prior to acceptance thereof,  [Comforts] shall give [Kashwere] . . . written notice and [Kashwere] shall have the right of first refusal. . . ."  (DE 139: R TMG SF Par. 47).  Plaintiffs contend that they were not given notice of a transfer or

the right of first refusal before Comforts transferred its interest to USAJPN, FBC, and Sirius. However, as Defendants point out, the Licensing Agreement further provides that "[t]he right of refusal . . . shall not apply if the proposed third party is an entity in which Peter Seltzer owns a majority of the equity ownership or maintains managerial control." (DE 139: R TMG SF Par. 47). It is undisputed that 90% of Comforts' interest was transferred to USAJPN. (DE 171: R DSF Par. 48). Defendants have produced evidence showing that USAJPN was nothing more than a holding company and that Seltzer held a majority interest in USAJPN, and Plaintiffs have not produced evidence that would contradict such facts. (DE 171: R DSF Par. 3, 48). Thus, the undisputed facts show that there was no transfer to a "third party" as referenced in the Licensing Agreement right of first refusal clause. Plaintiffs also contend that Comforts transferred 10% of its interest to FBC and Sirius. (DE 139: TMG SF Par. 47). However, Defendants contend that the 10% was also transferred to FBC and Sirius as a goodwill gesture when the 90% interest was transferred to USAJPN the holding company, and Plaintiffs have not cited evidence that would support a contrary conclusion. Plaintiffs have not produced evidence to show that FBC or Sirius made a written offer to purchase Comforts' interest. Reingold admitted at his deposition that he had no evidence that Seltzer ever received a written offer. (DE 171: R DSF Par. 49). Plaintiffs point to a distributor agreement entered into between Comforts and FBC on October 1, 2010. (DE 139-16). However, that agreement does not specify that any written offer was extended to Comforts and the agreement is entirely consistent with Defendants' version of the facts relating to the

11

transfer of the 10% interest in USAJPN. Thus, the undisputed facts show that the transfer of interests from Comforts involved a transfer to a holding company and there never was any type of "written offer acceptable to" Comforts that would have triggered Comforts' obligations under the right of first refusal clause in the Licensing Agreement. Thus, the undisputed facts show that there was no breach of the right of first refusal clause. Based on the above, Defendants' motion for summary judgment on the claim for declaratory relief and on the breach of contract claim in Counts I and V is granted.

### B. Declaratory Relief Claim (Count II)

Defendants move for summary judgment on the claim for declaratory relief in Count II. Plaintiffs' claim in Count II of the amended complaint is premised on Plaintiffs' contention that the Licensing Agreement was terminable at will. Defendants acknowledge that the Licensing Agreement provides a "perpetual license" and that licenses that do not specify duration are generally deemed to be terminable at will. *Jespersen v. Minnesota Min. and Mfg. Co.*, 700 N.E.2d 1014, 1016 (Ill. 1998)(stating that "[c]ontracts of indefinite duration are terminable at the will of either party"). Defendants contend, however, that Plaintiffs should be estopped from asserting that the Licensing Agreement was terminable at will because, in reliance on the representation by Plaintiffs that the license was irrevocable and perpetual, Seltzer gave the remaining assets in his company to Reingold and Gleckler for no money in return. Plaintiffs respond in a conclusory

fashion that Defendants have raised "questions of fact that cannot be resolved on summary judgment." (Ans. D SJ 22). However, Plaintiffs fail to identify the alleged disputed facts or point to evidence to contradict Defendants' evidence in support of estoppel. *See Goodman v. National Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010)(stating that summary judgment is "the 'put up or shut up' moment in litigation," meaning that "the non-moving party is required to marshal and present the court with the evidence she contends will prove her case"). Since Plaintiffs have failed in their opposition brief to point to sufficient evidence to support their claims, Defendants' motion for summary judgment on the claim for declaratory relief in Count II is granted.

### C. Rescission and Restitution Claims (Count III)

Defendants move for summary judgment on the claims for rescission and restitution in Count III. Plaintiffs' claim in Count III of the amended complaint is premised on alleged breaches of the Licensing Agreement. Since as explained above, the undisputed facts show that no such breaches occurred, Plaintiffs have failed to point to sufficient evidence to show that they are entitled to rescission or restitution. Therefore, Defendants' motion for summary judgment on the rescission and restitution claims in Count III is granted.

### D. Injunctive Relief Claim (Count IV)

Defendants move for summary judgment on the claim for injunctive relief in

13

Count IV. Plaintiffs' claim in Count IV seeks injunctive relief to enforce the terms of the Licensing Agreement based on the alleged breaches of that agreement. Since as explained above, the undisputed facts show that no such breaches occurred, Plaintiffs have failed to point to sufficient evidence to show that they are entitled to the requested injunctive relief. Therefore, Defendants' motion for summary judgment on the injunctive relief claim in Count IV is granted.

### E. Injunctive Relief Claim (Count VI)

Defendants move for summary judgment on the claim for injunctive relief in Count VI. Plaintiffs' claim in Count VI seeks injunctive relief to enforce the terms of a non-compete agreement signed by Seltzer (Non-Compete Agreement). Plaintiffs contend that Seltzer violated the Non-Compete Agreement by engaging in conduct such as forming USAJPN and suing Plaintiffs' customers in California. However, as explained above, the undisputed facts show that USAJPN was nothing more than a holding company. As to the lawsuits filed by Defendants, Plaintiffs have not presented sufficient evidence for a reasonable trier of fact to conclude that Defendants pursued litigation in bad faith or to conclude that Defendants were barred from seeking relief for perceived infringements on their rights. Plaintiffs have not pointed to sufficient evidence to show any breach of the Non-Compete Agreement. Therefore, Defendants' motion for summary judgment on the injunctive relief claim in Count VI is granted. The court also notes that Plaintiffs filed a motion to strike certain statements of additional facts (DE 185) submitted by Defendants relating to

14

their motion for summary judgment. The court did not need to consider such facts in resolving Defendants' motion for summary judgment and therefore, Plaintiffs' motion to strike is denied as moot.

## II. Plaintiff Parties' Motion for Summary Judgment on Counterclaim

Plaintiff Parties move for summary judgment on the counterclaim brought against them by Defendant Parties.

### A. Breach of Contract Claims (Counts I and II)

Plaintiff Parties move for summary judgment on the breach of contract claims in Counts I and II. Defendant Parties argue that under the terms of the Licensing Agreement they were given the exclusive right to sell Kashwere products in Japan. Defendant Parties contend that Plaintiff Parties breached the Licensing Agreement by selling Kashwere goods to third-party wholesalers (Third Parties) and by encouraging such Third Parties to sell the goods in Japan and that Plaintiff Parties should have known such goods would be sold in Japan. It is undisputed that the Licensing Agreement provides that Plaintiff Parties are required to "direct[] purchase orders received by [Plaintiff Parties] . . . to" FBC. (DE 182-1: R TMG SF Par. 41). It is also undisputed that the Licensing Agreement names Comforts as the "exclusive distributor" in Japan. (DE 182-1: TMG SF Par. 37). It is further undisputed that the Licensing Agreement obligates Plaintiff Parties to cooperate with Comforts to stop a third party from "infringing the Licensed Marks in" Japan. (DE 182-1: TMG SF Par.

41).  Plaintiff Parties correctly point out that Defendant Parties have failed to point to evidence to show that Plaintiff Parties established a competing distributor in Japan. In addition, is undisputed that the Third Parties obtained genuine Kashwere products from Kashwere and thus the goods in question were not infringing on the Marks. (DE 182-1: R TMG SF Par. 78).  Plaintiff Parties correctly point out that nothing in the Licensing Agreement provides that no Kashwere goods could ever enter Japan on a second and third-hand basis.  Defendant Parties cannot rewrite the terms of the Licensing Agreement in retrospect and have not pointed to sufficient evidence to show that the implied terms now proposed by Defendant Parties were understood by the parties to the agreement.  The terms in the Licensing Agreement are straightforward and unambiguous and Defendant Parties' current position is not consistent with such terms.  Nor have Defendant Parties pointed to sufficient evidence to show that Plaintiff Parties took a direct role in the sale or manufacture of Kashwere goods in Japan.  Therefore, Plaintiff Parties' motion for summary judgment on the breach of contract claims in Counts I and II is granted.

### B.  Fraud Claims (Count III)

Plaintiff Parties move for summary judgment on the fraud claim in Count III. Under Illinois law, for a common law fraud claim, a plaintiff must establish: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce[d] the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages

16

resulting from reliance on the statement." *Cohen v. American Sec. Ins. Co.*, 2013 WL 5890642, at *10 (7th Cir. 2013)(internal quotations omitted)(quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996)). Defendant Parties argue that in reliance upon false representations made by Plaintiff Parties in the Licensing Agreement that Comforts would be the exclusive distributor of Kashwere goods in Japan, Defendant Parties were harmed. Defendant Parties contend that Plaintiff Parties committed fraud because of Plaintiff Parties' dealings with the Third Parties that sold goods in Japan. However, as explained above, the undisputed facts show that Plaintiff Parties did not violate any terms of the Licensing Agreement in their dealings with the Third Parties. The undisputed facts do not indicate any deception on the part of Plaintiff Parties that would support a fraud claim. Therefore, Plaintiff Parties' motion for summary judgment on the fraud claims in Count III is granted.

### C. IICER claims (Count IV)

Plaintiff Parties move for summary judgment on the IICER claims in Count IV. Defendant Parties contend that Plaintiff Parties attempted to interfere in the contractual relationship between USAJPN and FBC. For an IICER claim, a plaintiff must establish: (1) "the existence of a valid and enforceable contract, (2) "the defendant's awareness of the contractual relation," (3) "the defendant's intentional and unjustified inducement of breach of the contract," (4) "a subsequent breach by the other contracting party caused by the defendant's wrongful conduct," and (5) "damages resulting from the breach." *Cromeens, Holloman, Sibert, Inc v. AB Volvo*,

17

349 F.3d 376, 398 (7th Cir. 2003). Plaintiff Parties have put forth evidence showing that Defendant Parties deliberately hid the nature of their relationships and that Plaintiff Parties were unaware of the agreements between Defendant Parties. Defendant Parties have not pointed to any evidence that would enable a reasonable trier of fact to find that Plaintiff Parties were aware of the contractual relation that is the basis of the IICER claims. Therefore, Plaintiff Parties' motion for summary judgment on the IICER claims (Count IV) is granted.

### D. Breach of Contract Claims (Count V)

Plaintiff Parties move for summary judgment on the breach of contract claims in Count V. Plaintiff Parties base the claims in Count V on Defendant Parties' breach of an arbitration award (Arbitration Award) entered in arbitration between Seltzer and Plaintiff Parties. Defendant Parties allege that Plaintiff Parties "breached the [A]rbitration [A]ward by failing and refusing to provide Peter Seltzer with regular monthly reports and refusing to pay Peter Seltzer all that was due to him under the sales of those inventory items." (D CC Par. 101). However, the undisputed facts show that the public record indicates that the Arbitration Award has been deemed to have been fully satisfied and released by a state court. (DE 182-1: R TMG SF Par. 73). Defendant Parties are thus precluded from seeking additional payment pursuant to the Arbitration Award. Therefore, Plaintiff Parties' motion for summary judgment on the breach of contract claims in Count V is granted.

18

### III.  FBC Parties' Motion For Summary Judgment on Counterclaim

FBC moves for summary judgment on the counterclaim brought against them by Plaintiffs.

#### A.  Injunctive Relief and Declaratory Relief Claims (Counts I and II)

FBC Parties move for summary judgment on the claim for injunctive relief and declaratory relief in Counts I and II.  Plaintiffs assert in Count I that FBC Parties violated the terms of the Licensing Agreement by attempting to register the Marks in Japan and by their involvement in the RE Line.  Plaintiffs seek injunctive relief to enforce the terms of the Licensing Agreement.  In Count II, Plaintiffs seek declaratory relief based on Plaintiffs' belief that there were material breaches of the terms of the Licensing Agreement.  As explained above in regard to Defendants' motion for summary judgment, the undisputed facts show that there was no breach of the Licensing Agreement.  Therefore, FBC parties' motion for summary judgment on the injunctive relief claim and declaratory relief claim in Counts I and II is granted.

#### B.  Declaratory Relief Claim (Count III)

FBC Parties move for summary judgment on the claim for declaratory relief in Count III.  Plaintiffs seek a declaration that the Licensing Agreement was terminable at will and that Kashwere effectively terminated any sublicense agreement with FBC. As explained above, in regard to Defendants' motion for summary judgment, Plaintiffs, when given the opportunity, failed to point to evidence to negate the

evidence produced by Defendants relating to their estoppel argument as it pertained to the Licensing Agreement being terminable at will.  Plaintiffs have failed to point to sufficient evidence to enable a reasonable trier of fact to find that any of the declaratory relief sought in Count III is warranted.  Therefore, FBC Parties' motion for summary judgment on the declaratory relief in Count III is granted.

### C.  Rescission and Restitution Claims (Count IV)

FBC Parties move for summary judgment on the claims for rescission and restitution in Count IV.  As indicated above in regard to Defendants' motion for summary judgment, Plaintiffs have failed to point to sufficient evidence to show that they are entitled to rescission or restitution.  Therefore, Defendants' motion for summary judgment on the rescission and restitution claims in Count IV is granted.

### D.  Breach of Contract Claims (Count V)

FBC Parties move for summary judgment on the breach of contract claims in Count V.  Plaintiffs' breach of contract claim in Count V is based on alleged breaches of the terms of the Licensing Agreement.  As explained above in regard to Defendants' motion for summary judgment, the undisputed facts show that there was no breach of the Licensing Agreement.  Therefore, Defendants' motion for summary judgment on the breach of contract claims in Count V is granted.

### E.  Unjust Enrichment Claims (Count VI)

20

FBC Parties move for summary judgment on the unjust enrichment claims in Count VI. Plaintiffs assert in Count VI that FBC Parities unfairly enriched themselves by registering the Marks, by filing a lawsuit against Kashwere, and by launching the RE Line. (P CC Par. 131). As explained above, the undisputed facts show that Defendants and FBC Parties complied with the terms of the Licensing Agreement, including conduct involving the RE Line. Plaintiffs have not pointed to evidence that would show that FBC Parties' conduct was inequitable or that they unjustly retained any benefit that rightfully should have belonged to Plaintiffs. Therefore, Defendants' motion for summary judgment on the unjust enrichment claims in Count VI is granted.

### F. TIPEA Claims (Count VII)

FBC Parties move for summary judgment on the TIPEA claims in Count VII. Plaintiffs assert in Count VII that FBC Parties attempted to interfere with Plaintiffs' reasonable business expectancy by naming Plaintiffs' customers in lawsuits. Plaintiffs contend that FBC Parties brought such actions in order to intimidate and harass Plaintiffs' customers. Plaintiffs however have not pointed to evidence to show that their allegations were based on anything other than speculation. Nothing barred FBC Parties from pursuing litigation when they believed that their interests were being harmed and that they were entitled to relief under the law. As Plaintiffs acknowledge, in regard to some of Plaintiffs' customers, the customers entered into stipulations with FBC Parties. Plaintiffs have not shown that they were parties to the

stipulations or took part in the negotiations of the stipulations and Plaintiffs' belief that the stipulations were the result of intimidation on FBC Parties' part is nothing more than speculation. Plaintiffs have failed to point to sufficient evidence to support their TIPEA claims. Therefore, Defendants' motion for summary judgment on the TIPEA claims in Count VII is granted.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion for summary judgment on the claims brought by Plaintiffs in the amended complaint is granted, Plaintiff Parties' motion for summary judgment on the counterclaim brought against them is granted, and FBC Parties' motion for summary judgment on the counterclaims brought against them is granted.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: November 8, 2013